Our next case is Walker v. Health International Corporation. Mr. Pizarro, did I pronounce your name correctly? Yes, sir. All right. And you reserve five minutes of rebuttal time, is that correct? Correct, Your Honor. Okay. You may proceed. You may please support Ramon Pizarro for the appellant. This case has two key areas. One of them, perhaps the most pressing one, is jurisdiction, because the district court has a duty to look at all times to maintain its limited jurisdiction. The issue of jurisdiction comes up with… Who's jurisdiction? Ours?  And so this court definitely has jurisdiction to determine whether the district court had jurisdiction in making its decision. And if it didn't have jurisdiction in making its decision, then… Jurisdiction over what? Your initial complaint? No, no, no. Well, after the settlement agreement was filed, whether the district court had jurisdiction after that. How can you argue that when you were filing papers at that time before the court? Well, because it was arguable both ways. Because the agreement had things to be completed. The agreement had three steps to it. You said you wanted to have the case continue and not have it stayed, and now you're arguing that the court had no jurisdiction. Well, at that point, the issue of jurisdiction, I could see that it was open both ways. Because the agreement had three steps to it. It had, number one, appellees had to pay the amount of the settlement. Then secondly, we would deliver a release. And then thirdly, then the stipulation of dismissal would be entered. So all of those conditions, precedent existed and they were complied with, correct? Correct. So you delivered the release. Correct. And the stipulation of dismissal was filed. And pursuant to the agreement, the stipulation for dismissal was to dismiss all claims in the action with prejudice. Correct. But the only thing that kept the court, that kept this issue alive, was that you refused to sign the dismissal. No. No, no, no, no. We were always willing to dismiss it once the money was paid. Was the money paid? It was paid after about, almost three weeks after the first payment was issued. No, but the money was paid. Yes, and immediately after payment. And you delivered the release. Absolutely. Releasing the defender from all claims. Correct. Okay. And then like as soon as the payment cleared, like within 24 hours, plaintiff filed its motion to dismiss the case based on everything being completed. So the issue of- Isn't that an acknowledgment that just the filing of the settlement agreement didn't dismiss the case? Well, it is an acknowledgment that there's two ways that they could have been seen both ways. How could the settlement agreement ever have dismissed the case because it wasn't a stipulation? It, in fact, contemplated in its plain terms that other things had to happen before the parties would stipulate. Yes. A stipulation, so the question means, well, what's the difference between a stipulation and an agreement? I mean, there's not much of a difference that can be argued. So the thing is, well, if, for example, if plaintiff would have agreed to have filing, have the agreement filed, the settlement filed, that would have meant every element of Rule 41A, 1A, 2. But you didn't. That's right, because we did not want to have the courts lose jurisdiction before payment was made. And so- But payment was made. Yes, but at the time- So you're arguing today there's no jurisdiction. Payment was made. All the conditions of the agreement were met. You supplied the release. Right. Right, right. So, well- Let me ask you this. Even if we agree with you, and I don't, but even if we do, doesn't the district court still retain jurisdiction to award sanctions for vexatious misconduct during a litigation? Even if the parties have filed a stipulation of dismissal? That is correct. That's the rule. And so, but the issue here was, as far as vexatiousness, was, well, at the time that a plaintiff filed- So why are you arguing jurisdiction if you agree that the district court retains jurisdiction to address this conduct? Well, because there was no conduct at the time that the, not only the complaint of conduct, at the time that- The merits question of whether your continued litigation of this case, after your agreement in the settlement agreement, constituted vexatious misconduct. It's not jurisdiction. Well, okay, so the thing is, if- I see this analogous as being, as what went on in the Rambis-Sampton case. Once you offered everything that the other party wanted, there's no more Article III jurisdiction. There's no more claimant controversy. And so, that divests the court of jurisdiction. So I think that's what happened at the beginning. But there was no clear signal to plaintiff as to whether the court had jurisdiction or not. So the thing is, there was an upcoming deadline. And furthermore, agreements, a lot of times, they just fall through. There's sometimes an issue of whether there's a mistake or what have you. So not until at least they performed at least one part of it, the plaintiff had to keep the case moving. So let's go from that point. Sure. Anything can happen to upset a settlement agreement. Correct. But you were unwilling to stay the court proceedings until, you know, you could see whether the agreement was, all the terms were going to be met or not. Correct. And even though, I mean- But you didn't reserve any of those rights in your settlement agreement. You didn't set forth timetables or anything like that that would say litigation's going to continue or the like. I mean, you agreed to settle the case. You agreed to payment terms. You agreed when you would submit a dismissal. I mean, when somebody, another party settles a case, they assume that that's all you need to do is comply with the terms of that settlement agreement. Correct. Not continue to respond to discovery and the like. We did not respond to discovery or require that they respond for discovery. In fact, the things that were filed by plaintiffs required no, basically no action until they paid. I mean, after the terms of the agreement were completed. Can I ask you a different question? In your blue brief on page 12, you cite the Buckhannon case from the Supreme Court, and you cite language about what a prevailing party is. Yes. You cite from the part of the opinion, quoting the petitioner's view of what prevailing party should be, which the court explicitly rejected. Isn't that right? I- Have you read that case? Yeah, I read the cases that I cited. You didn't read your friend's brief because it pointed out that it was incorrect. Well, other cases, the- No, no. I'm asking you about Buckhannon. Okay. Well, as far as that point, I mean, Buckhannon, I don't remember exactly why that argument was rejected. But typically, cases say that attorney's fees go to prevailing parties. No, Buckhannon. But this is the problem. You have quoted a portion of Buckhannon, said it's the holding, and it's exactly not the holding. Yeah, I didn't mean to do that. Well, but your friend pointed it out in his red brief, and you didn't even bother to acknowledge that mistake in your gray brief. Yeah, I don't know why that happened. You have no excuse for why you completely miscited a Supreme Court controlling case to this court. Oh, no, no, no, no. My reading of the Supreme Court's rejection of an argument that was presented was that there was a difference in terms of the issue being a prevailing party is entitled to or can be entitled to attorney's fees. Sure. And what Buckhannon was interpreting was whether the catalyst theory- Oh, right, right, right, right. Entitled you to prevailing party status. And that's the language you quoted. The catalyst theory is if a lawsuit brings about a voluntary change in conduct. That was the catalyst theory. That's the language you quoted on page 12 of your brief. It is not the law. It is exactly what the Supreme Court rejected. I believe there was- It isn't that your problem here why you're not the prevailing party. You didn't get a judgment on the merits from a court changing the relationship. Your lawsuit brought about a voluntary change in the defendant's conduct, which is the catalyst theory, which has been rejected by the Supreme Court and this court as the basis for prevailing party status. Yes, but I think there were other- The catalyst theory, I mean, there was some nuances there that I saw that that's why- I mean, there's a nuance in terms of- Because sometimes parties can change their positions for different reasons. And so- But in this situation, it did bring- The lawsuit did bring out about what was sought. In view of your exchange with Judge Hughes, is it still your principal argument that you should win today on the basis that you're a prevailing party? Well, no, I think the key issue here, well, there is- Is that there was moving things, keeping things moving along per the schedule while there was no clear signal that this thing would actually hold or be dismissed. And especially at a time when we had no sign that they were going to perform. And we did things, the plaintiffs did things in a manner that did not require responses by the other side. All that was still pending was that they make the payment and start things going in the first place. Mr. Bizar, you're into your rebuttal time, but before you sit down, let me make a comment. I was very disturbed when I read your brief. I thought that if all I had was just your brief to go by as to what the facts of the case are, I would have a complete misunderstanding of what the facts are. You left out significant information, factual information that's necessary to this court. It's not that you blended or you argued the facts in your favor, it's that you misstate the facts altogether. And you leave out extremely important aspects of the case that almost cast the entire brief in a very disingenuous manner. And now you were sanctioned below. And you brought this appeal to us and you start arguing the lack of jurisdiction and the issue dealing that you're a prevailing party. And in response to Judge Hughes' questions, you acknowledge that no, maybe the prevailing party theory doesn't apply here. It really brings to mind as to why we are here, given the allegations in your brief. Now, I want to give you some time to think about that, and maybe you may want to respond. And let's hear what the appellee has to say now. Thank you. And you may please record Dan Dietrich on behalf of Health International Corporation, HSN Inc., and HSN Interactive. Your honors, the district court did not abuse its discretion here when it awarded my client's attorney's fees for the post-settlement actions that appellant took. Almost immediately after settling this case on May 6th, the appellant took the position that the claims were not fully resolved, and he continued to litigate this matter. Three days after that, on May 9th, we filed a notice with the district court that the case settled, asked for a 30-day extension of time for all the pending deadlines, giving my client's time to make its payments. The settlement agreement clearly states that we have 30 days to make payment. That was our obligation. That was our notification when we sat there on May 6th. We represented that payment would be made. That's the notification that we gave. That was our only obligation in that 30-day time period. Was there ever any indication on your part to the plaintiff that you were thinking of not paying the settlement amount or that you were backing out on the settlement agreement? Absolutely not, your honor. That discussion never took place. On May 12th, after appellant submitted his notice to court laying out the reasons why he opposed our motion to stay the deadlines, he said that there were issues to be resolved and that he was eager to keep the case moving forward. That was a Friday. May 9th was a Friday. On May 12th, that Monday, I reached out to appellant's counsel, and I asked him, what were these outstanding issues? I never heard a response. I had no idea what the outstanding issue was. The next day, May 13th, he filed a motion to amend the complaint, adding additional claims. And in there, he again took the position that all the issues in the second amended complaint, we were working towards resolving those, but everything wasn't resolved. That was on May 13th. Our response to that motion was due prior to June 5th, prior to the date. June 5th is the date that our payment was due. So the representation that nothing had to be done is incorrect, because we had to respond to that motion to amend. Litigation, for our purposes, was continuing to go forward. On May 9th, the court, the district court, denied our motion to extend the deadlines. And it specifically explained that the reason was because there appears to be a disagreement over whether or not the settlement agreement resolved all the claims. And that's why the case went forward. So no, there was no representation. In fact, shortly after that, and mind you, there was no obligation on our part to give an ongoing representation of whether or not we were going to comply with 30 days. That was not part of the agreement. Regardless, though, we did give notification. Shortly after that last payment was made on May 22nd, on May 28th, I reached out to co-counsel, Appellant's co-counsel, and I notified him that yes, we have the payments in hand. I have them. Mind you, on May 19th, that same co-counsel represented that he agreed, and this is all on the record, represented that he agreed that the case was settled. So it was confusing to me why the case was continuing to litigate, why our continued motions to extend the deadlines were being rejected. I may not, I'm sorry. Go ahead. I was just going to say, on May 9th, had Appellant's counsel agreed to stay the deadlines, all his concerns would have been eliminated because the payment would have been made. We would not be here before you today. All this time and energy in the district court and this court would have been avoided. Do you have a ballpark figure, or have you sat down and figured out what your attorney's fees are related to the appeal, just the appeal? Your Honor, related to the appeal, I can say that, unfortunately, it's probably in excess of what the final judgment was, and the final judgment was in the $20,000 range. You see the briefing. There were a number of misstatements and inaccuracies that we had to address and a number of tangent issues throughout the appellant's brief that we had to address so that the court was fully advised. We didn't know we were going to have oral argument, so we wanted to make sure that everything was identified in our briefing. I can get an actual number, but I would say it's in excess, probably between the $20,000 and $30,000 range would be my guess as we sit here today. That is one of the things that we would ask. In addition to rejecting the appeal and affirming the judgment, we would ask that the court also award us fees for this appeal. We believe that this is mentioned in one of our motions. We believe the court does continue to have the inherent and equitable authority to do so, and Rule 38 also provides that. I just want to say one more point, Your Honor, because in the briefing, I feel obligated when my personal, ethical, and professional responsibilities are called into question. I believe it was in the reply brief. Appellant's counsel mentions the ethical rule of the Colorado rules. I believe I explained it in our briefing, but that rule applies between counsel and his client. Appellant is trying to bring that rule as an obligation on my part to appellant. Clearly, appellant is not my client. The rule is inapplicable. I just want to point that out in case it wasn't clear. We certainly complied with all of our ethical responsibilities. Again, the only obligation we had was to make payment on the 30th day. That payment is undisputed. It was made on time. For those reasons, as well as the reasons laid out in the district court's order, Your Honor, there was no abuse of discretion in this case. Okay. Thank you. Thank you. Thank you, Your Honor. There's been a big kind of mixing of claims versus issues. What plaintiff told the court was there were still many issues left to be resolved. And the issues had to do with the things that had to be done pursuant to the agreement, especially coming up with the release and the stipulation of dismissal. So it wasn't that there were – there were still a lot of issues which required work. And then the payments, it was on June 2nd that we found out that plaintiff's counsel had the payments. And before that, I mean, they had – the first payment, I believe, was made on May 16th. And so had we even found out about any of that, we would – that would have completely changed everything because the key thing was the payments. I mean, I think that's at the core of any kind of a settlement agreement. And so in terms of the – also in terms of the catalyst theory, I don't think the – I mean, I didn't – I missed that on the reply. But the catalyst theory, it was not really – it was not a catalyst theory approach. It was that the rule – every time that an attorney's fee is awarded, yeah, the definition of a prevailing party was not the catalyst theory. But I believe that plaintiff was the prevailing party below. And how you define maybe that definition of prevailing party – How were you the prevailing party below? Oh, well, Mr. Walker got a – well, they stopped infringing the patent. And they also paid him what I think is a substantial amount of money. And they took licenses and so on. None of that was ordered by the court, right? That was done through a voluntary settlement agreement. I see. I see. That – well, I'm not – my understanding was that if he obtained what he was seeking, then he would be a prevailing party. But that's exactly opposite of the law. I mean, how can you actually say that after having briefed this case, presumably read these cases that everybody is citing, and having even a cursory knowledge of what prevailing party status is under Buckhannon, what you're arguing is that because he sued and got a favorable settlement without any involvement under the court, that he's a prevailing party. That's the catalyst theory that's been rejected. Yes. And many of the other cases just say prevailing party, and we considered that as being prevailing. Okay. Ms. Pizarro, I – you know, we take these matters very seriously, both in the grounds of appeal that you've taken to bring this appeal, your briefing, your failure to respond to the appellee. And I think you kind of followed by what – the question of this court, that we're troubled by this. So I hereby order you to show cause within 30 days as to why this court should not issue sanctions, both for filing a frivolous appeal and for making a frivolous argument in this matter. We'll follow this with the written order. You have 30 days as of today in which to respond to the order to show cause, and I'll give the appellee 20 days to file a response to that. We thank you very much. Thank you, Your Honor.